SCC v. Kavalath. I'm not sure if I'm pronouncing that right, but I'm sure I'll be corrected if I'm wrong. All right, the Phoenix are leaving, but enjoy the rest of the day. Thank you for being here. Thank you, Your Honor. Okay, thank you. Good morning. I'll get to talking to Mr. Peel when the door is open. All right. So, Mr. Ford, you have reserved two minutes for rebuttal. And you'll give me the correct pronunciation of the name Kavalathkas. Is that right? You've got it right. Really? Two for two today. Good morning, Your Honors, and may it please the Court. I represent defendants Tim Kavalathkas, his son, Kelly Kavalathkas, as well as two trusts that are listed as relief defendants. A trust in the name of Tim Kavalathkas, as well as his wife, Magdalene Kavalathkas. We are here to request that the Court vacate and remand a lower court ordering disgorgement and penalties of approximately $80 million, jointly and separately, based on a finding of violations of the securities laws. In reaching the decision, the lower court erred in applying the appropriate law and appropriate statute. Well, the appropriate law of this circuit or the appropriate law of the nation? Because I guess the Supreme Court is going to be deciding the latter soon, I imagine, right? I agree. And I will say, we believe that we will prevail on this case regardless of the Supreme Court's decision in Sripec. But most certainly, she failed in applying the correct law of this circuit under GOVIL v. SEC, which was correctly decided as a thorough and well-written opinion that gives teeth to Congress's command when it passed the 2021 statute, authorizing the SEC to seek an accord to award disgorgement. Specifically, in passing that statute, Congress sought to enact recent pronouncements. Let me just tell you what I think GOVIL says, and you can correct me if I'm wrong. I think you're over-reading GOVIL in your papers, but maybe I'm misunderstanding your argument. I think what we said in GOVIL, and other courts disagree, but that there has to be a predicate finding of pecuniary harm to investors. If there is such a finding, then the ill-gotten gains are taken away from the defendant. And you don't have to show whether or not each individual investor along the way gained or lost. Once there's a predicate showing that there was a pecuniary harm, you take all the profits, net profits, from the defendant. Isn't that what GOVIL said? Your Honor, it needs to be read in conjunction with COCESH, and therefore GOVIL does not say that. Speak right up, will you? You can raise that. You can raise the lectern if you wish, so it will help you. How tall are you, Mr. Court? 6'4". 6'4". That's freakishly tall. And shrinking. I'm 6'3". That's not anything taller than me. That's freakishly tall. I do appreciate the question, and GOVIL needs to be read in conjunction with COCESH. And the Supreme Court was clear in COCESH that when relief is imposed for violation of a public law, on the one hand, and goes beyond compensation, it is a penalty, as the Supreme Court has understood the term for 150 years. So to the extent that Congress wished to create legal or just legal disgorgement or a penalty, it would have been very easy for Congress to do so. It would have written the following words in that statute. The SEC may seek and the court may disgorge ill-gotten gains of a defendant. They chose not to use that formulation. They chose to use the formulation the court may disgorge unjust enrichment by the person who received such unjust enrichment as a result of the violation. Now, unjust enrichment, as we know by its nature, is an equitable principle. It is set forth accurately in the third restatement of restitution and unjust enrichment, which deals with equitable restitution. Your position is then that the disgorgement has to go investor by investor and see who made money, who lost money? Is that your argument? Our argument is that there needs to be a predicate finding under the statute. I agree with that part. But once there's a predicate finding of harm, is it your position that to take away the ill-gotten gains, you have to go investor by investor and figure out who lost money and who gained? In this case, that is easily obtainable. I'm not suggesting that there's other cases where the calculation — We've never said that. In footnote 14 in Goebbel, it said once there's a predicate finding, in some cases, the ill-gotten gains will exceed the harm and the victim may recover his loss and more. So even in Goebbel, we recognize that once there's a predicate harm that's found, that you can take away the ill-gotten gains even if an individual investor may have made money, right? Your Honor, we think, again, this statute needs to be read not in isolation but with the provision of 78U that authorizes penalties. Now — All right, let's say we — let's say all they need is a predicate harm, all right? In this case, isn't it clear that if there's fraud that leads to an artificially inflated price, that all the investors who bought at the artificially inflated price were harmed by the fraud? Isn't that necessarily true? As we set forth in our briefing on page 28, we set forth a chart of several investors in the company who invested $23 million and made extraordinary profits on that investment. Let's assume that you're incorrect, that you don't need to show that every individual investor was harmed. You should show somebody was harmed. Some investor was harmed by the fraud. Let's just assume that that's the standard. Isn't it clear that some investors here were harmed by an artificially inflated stock price? The finding was not properly made down below, and that's why we're requesting that it be remanded for that finding. And allow me to put this in context. The violation of 10b-5 requires a showing that there was a material misrepresentation in connection with the purchase or sale of a security. It does not require a finding that a defendant was conferred a benefit, that there was an impoverishment of a victim, or that it was as a result of the violation. In fact, the SEC can obtain an injunction under 10b-5 for an individual about to engage in that violation. In other words, it's almost like an inchoate civil violation where they can come in and obtain an injunction before there's actually been any injury. Judge McMahon said the evidence showed this, that your client scheme took place from 2015 to 2018. Your clients purchased airborne, fabricated payments for S1 shares, obfuscated the relationship with airborne, misled brokers, initiated misleading promotional campaigns, and sold shares at inflated prices. And they supply evidence, including a declaration from one investor, Ms. Guerra, and the SEC, put in a declaration from Becker, establishing individuals who sold shares, obviously, at what she found to be an artificially, fraudulently inflated price. So what more? On remand, I don't understand what more the district court would find. Well, that it was as a result of the violation, which is a curse. Didn't I just read what you just indicated, that it was a result of the violation? She just indicated all the fraud that took place and said this led to the shares being sold at an inflated price. Right? Isn't that what I just read? That is mixing up correlation with causation. At any point that we look at the stock market, we will be able to identify individuals who lost money. And in fact, Amadeo Lera, who you referenced, testified very clearly that he was unaware of any of the SEC filings that they claimed contained misrepresentations or omissions. And therefore, at least for that one individual, there is no finding that it was as a result of the violation. So what we have is a situation where correlation has been mixed up with causation. Part of this confusion, I believe, Your Honors, is being caused by conflating a latter portion of the restatement on restitution. So it is divided into four parts. Part one is an introduction. Part two describes liability for unjust enrichment. And part three describes remedies. Now, Section 51 of the restatement that has been cited, too, by the Supreme Court, as well as the SEC, is referencing remedies. Once there has been a predicate finding of unjust enrichment, but in any of those contexts, you have a private litigant suing another private litigant. So there must be, certainly in Federal court, Article III standing meaning an injury in fact. When we address these issues in the context of a violation of public law under the Securities or the Exchange Act, there is no required finding that the defendant was conferred a benefit, that the plaintiff was impoverished, or that it was the result of any violation. So there is an absence in the record, both in the summary judgment decision, as well as in the final judgment, connecting those dots. And so what has happened is we have equated correlation with causation, which is not to say, Your Honor, that we can't, that the SEC will not be able to, on remand, make that finding. It just was never made. And so that's what we're requesting that the court do with regards to the pecuniary gain element that was established by Govill. Certainly, at least $23 million of the disgorgement that the SEC has sought, they're purporting to return to investors who made an incredible windfall. The remaining $21 million at issue, we do not have findings, because the court did not apply the appropriate law as to whether or not that $21 million was received by any of the defendants. So we are also seeking remand on that basis. So essentially, on all three of the elements that are established under the plain language of 78U and confirmed by Govill have not been satisfied in this case. One, that the benefit was conferred to the defendants, which would allow that calculation under Section 51 of the restatement as we've been describing it. Two, that there was an impoverishment of these individuals, and that both that conferred benefit and that impoverishment were the result of the violation. That keeps things squarely within the realm of equity. Here's why I believe this is important. 78U authorizes the SEC to obtain a penalty equal to the gross pecuniary gain of the defendant. So to the extent your honor is concerned with what happens where you can't readily identify it or whether you have to identify everybody, Congress has laid out a statute that allows that penalty for gross pecuniary gain. Once the SEC collects that penalty under 15 U.S.C. 7246, they are permitted to divert it into what is called a fair fund and then distribute those funds as they see fit, which could include non-equitable purposes, such as going to a whistleblower or even going into the Treasury, or they can determine what, if any, individuals should be eligible for disgorgement and send those funds. So Congress has already understood and envisioned this. We do not believe it's very difficult in this situation. They've already identified 17,000 individuals who they believe lost money. The issue with it is that the good many of those are speculative day traders who bought and sold stock within minutes, or not hours, who could not be adequately classified as victims. All right. Mr. Fort, we're way over. You have two minutes for rebuttal. I guess my last question is just do we need to wait for the Supreme Court to issue its ruling? This is a hard one to pass, too, strippage. Yeah. I do not believe we need to wait for strippage to vacate. Should we? So you think it's going to provide guidances to some of these things that we're discussing? It would be the panel can also at this point vacate and remand with instructions to make findings as to the benefit that was conferred to both of the defendants as well as the relief defendants. As we pointed out in our briefing, there is inadequate findings on that. By way of limited example, if we go back to what the SEC is citing to, I'll give you one quick example, which is paragraph 112 of their Rule 56.1 statement. If you look at the support for the finding that my clients received that benefit, they cite to a deposition of Tim Kavalakis where he took the Fifth Amendment, a deposition of Kelly Kavalakis where he took the Fifth Amendment, and a deposition of an attorney named Cassie Olson who took the Fifth Amendment, and then an email from an individual named Dimitris Fousekis who is nowhere in the record, nowhere in any briefing, or nowhere in any of the court's findings. They didn't. Thank you. We'll hear back from you in a minute. We'll now hear from Ms. Dingell. I am not 6'4". Would you like to be? Good morning, Your Honor. May it please the Court. I'm Carrie Dingell on behalf of the Securities and Exchange Commission. I would just like to reorient the Court toward what the District Court actually found here because I think it goes a long way toward addressing many of the appellant's challenges. This was a total fraud, and that is essentially uncontested. Appellants don't challenge the summary judgment. Liability findings, there was a scheme liability claim. The Court found that Kelly Kabalofkis, with the help and participation of his father, Tim, orchestrated a scheme to defraud airborne investors that consisted of Kabalofkis' assuming secret control over airborne and then engineering a pump-and-dump scheme that enriched him and his family members. In the process, the defendants made approximately $44 million, and at least 17,000 retail investors suffered trading losses totaling approximately $51 million. So we've calculated the losses in this case, and they are greater than the disgorgement that the Commission is seeking. On appeal, the appellants challenge only the remedies, which each serve a distinct purpose. There's injunctions to prevent the defendants from committing future violations, disgorgement to deprive them of their ill-gotten gains for the violations that they've committed, and penalties to further punish and deter them. And I'm happy to take the Court's questions on any of those. I guess I'm curious to get your thoughts also in terms of the Supreme Court. I mean, is there any point in us trying to do this now when we're going to hear from the Supreme Court about a circuit split? That may not resolve this case completely, but it does seem like it's going to inform how we go about deciding this case. I agree with that, Your Honor, and I think we should have an opinion by the end of June in that case, and so the Court could certainly wait for that. That case involves a circuit split over whether pecuniary harm is required at all, and I think Judge Bianco is exactly correct about what Goebel does. It creates a threshold requirement that you have to show that there was some victim that suffered pecuniary harm. That is only the law in this circuit, and that is the stricter standard, and we have more than met it in this case. We had Commission economist Chai Becker go through the blue sheet data from brokerages and identify 17,000 retail investors who suffered losses. The Commission has said that in the event disgorgement is collected, we will go back to the district court with a distribution plan. The idea that anyone will get a windfall I think there's just absolutely no support for. There's no distribution plan yet, but typically, you know, when the Commission creates a distribution plan, it will assign a recognized loss amount to each investor, and then depending on how much money we collect, it will figure out the fairest way to go about compensating the investors who lost money, and that is what we intend to do in this case. Because the 17,000 in your affidavit, the Commission's expert that submitted the affidavit with regard to the loss, with regard to the public investors, the 17,000, your opponent says, well, there's day traders that are involved in there. Does that sort out for the day traders? I'm not sure what – I mean, if day traders suffered losses, then they might also be victims. There's nothing that says – But there does have to be some connection between the conduct of the defendants, which create – the allegation is, and it's not contested now, that it created an inflated price because of misrepresentations. If someone lost money because they traded on – or they bought on Monday and sold on Tuesday, and the blip was $0.10 on the penny stock kind of markets, that's not a loss that's correlated to the inflated prices. That's correlated to the fluctuation of a highly volatile market. Well, I think here it's important that this was a total fraud, and the price was inflated the entire time. So every investor who purchased money at an inflated price, I think Judge Bianco's right. So any purchase price is a loss for that investor? Yes, Your Honor. But, you know, importantly, you don't – there's nothing in Goebbels that says that you net out folks who might have made money. I mean, they all bought at an inflated price, but then some of them might have sold while the price was still inflated. But there's no requirement – Well, more inflated. Some of them won on this deal probably, right? Right. But there's no requirement that you net out those winnings. The commission, you know, Kokesh made clear, does not stand in the shoes of individual investors in these actions. And so to the extent that there is a pecuniary harm requirement, which we'll know from the Supreme Court shortly, it is a threshold requirement that there must be some victim who suffered pecuniary harm. And that arises from the Supreme Court's discussion in lieu, saying that there must be victims, and this Court has held that that means someone who suffered pecuniary harm. But I think what the appellants are asking for is for the commission to have to show reliance and to do a loss causation analysis with respect to every single investor. That is not required by the case law. The reason in private rights of action, you know, under Dura that you have to show loss causation is that you are a particular investor showing that you suffered damages and that you deserve to be compensated by the wrongdoer. That's not what the commission is doing. The commission's disgorgement is a measure of ill-gotten gains. It's measured by the defendant's unjust enrichment. And so once we've shown that there is some universe of investors who suffered loss, the measure of disgorgement, and Goebel makes this clear, is the unjust enrichment of the defendants. And here we've shown, you know, there's a price report in the record showing that Mr. Kavalafkas was using the accounts of others trading shares from their accounts and there's... Well, that then goes to who gets included within the cooperative kind of relationship. It draws them into kind of a partnership analysis, and certainly Goebel doesn't reject that, and Lou identifies that as a basis for joint liability with regard to those people participating, right? Correct, Your Honor. But as individuals that don't fall within that, does that then still become a measure for disgorgement for those that benefited that don't fall within that kind of circle of friends? I'm not sure if I understand the question. Are you talking about investors who suffered losses? Well, both the private investors and the public investors. Are there some within the private scheme for which the frequency with which he or the access that he had to their accounts isn't the same? I mean, there's allegations that he could go into mom and dad's trust funds and pool money in and out regularly. I get that. With regard to... I mean, there's other individuals who did well here, a cook. Isn't there one individual who was a chef or something at a restaurant or something? So there were other associates in the scheme who are not currently before this court. They settled. If you take a look at the price report... So they're not part of the disgorgement number? Exactly. They're not. But the price report is the commission had an expert who was a 15-year veteran of the FBI do a digital forensic examination of the accounts to show that it was Kabalofkas who was doing much of the trading and directing money. And then there's also a declaration from a commission accountant that shows, you know, that the money was being used to benefit Mr. Kabalofkas and his father. All right. Just to go back to... I think you made this point, but once the disgorgement happens, you consider who made money in distributing that to the victims. You consider who may have made money through day trading or something else in distributing that. Is that correct? That is correct. And I just want to add one point, which is that, you know, as far as what is equitable, what the appellants are arguing is that the money should stay with the defendants in whose hands it is necessarily ill-gotten gains. I think that would be the least equitable result. So we haven't gotten to exactly how the money will be distributed, but the district court retains jurisdiction to approve of that at a later stage. It depends a lot on collections because we don't know how much money we'll be able to collect, and there's more work to be done once there is a pot of money to distribute to determine who it should go to. But in general, the commission does take into account, you know, folks who are net winners and net losers and attempts to compensate victims for their harm. It's very rare that we're able to fully compensate, you know, every victim. And here we have $51 million in trading losses and a $44 million disgorgement award. So I don't think that there will be, you know, any discussion of windfalls. I guess it gets me back to the question I began with, which is, I mean, is there any reason for waiting then? It seems to me like the Supreme Court's decision is only going to make things easier for you, right? Yes. So... I think if the court thinks that, you know, we've met all of the requirements under this circuit's case law, Goebel, and others, that you could affirm the district court's judgment without waiting for this rivage opinion. But to the extent that you wanted to wait and that opinion says anything, that weighs on these principles, we're happy to file, you know, some supplemental briefings. Well, then I guess is it likely to answer some of the questions that you just raised about collection or calculation after the pecuniary harm point? It is possible. You never know what the Supreme Court will lead into. The question presented is simply whether there is a pecuniary harm requirement. So the court could answer that very narrowly, you know, but they might say something relevant. All right. Well, thank you, Ms. Dingell. We'll hear from Mr. Ford for two minutes to rebut. Thank you. Thank you again, Your Honors. We believe the SEC is engaged in a sleight of hand where they're conflating the calculation of disgorgement with the a priori prerequisites. We're, again, asking the panel to rule on the actual language of the statute, and we feel confident that the Supreme Court will agree on this. What they're essentially requesting that you do is you change the language in the statute from an equitable form of relief, unjust enrichment, to the words ill-gotten gains. We do not believe the statute can be read this way. If the statute is read that the court may disgorge the ill-gotten gains, it is simply duplicative of the penalty provision. Congress would have merely said the SEC can seek and the court can award the greater of the statutory specified penalty or two times the gross pecuniary gain of the defendant. They didn't say that. They intended to create a remedy that includes a tight connection between the benefit conferred to the defendant and the impoverishment suffered by the victim in this case. Right. But do you see the Supreme Court taking up that issue? Yeah, that's the issue that they're going to be ruling on, and I feel confident. That's not the issue they're going to be ruling on. They're ruling on a much narrow issue, whether or not there's a predicate pecuniary harm requirement. You're suggesting the whole law of disgorgement is wrong. They're not going to address that. Well, I'm not suggesting the whole law of it is. The statute should be based on ill-gotten gains. And we've been saying, and I've heard the circuits been saying for years, it's based on ill-gotten gains. They're not revisiting that. They're revisiting whether or not in order to retrieve those ill-gotten gains, you need a pecuniary harm requirement or not. So you can wish for a lot, but I don't think it's going to happen. I appreciate it, Your Honor. The ill-gotten gains refers to the calculation. If you go back to Gabelli in 2013, the Supreme Court was clear that it is not an equitable remedy if it goes beyond compensation. Kokesh reaffirmed it, that if it's for a violation of public law and it goes beyond compensation, it is not equity. It is a penalty as they've come to understand the term. I do not believe that this provision can be read as penalty. We are not requesting that the court overturn the longstanding understanding of unjust enrichment in restitution law, that it be measured by the gains or calculated by the gains to the defendant. That is, in fact, the case. However, in order for it to be equitable, it must relate to the impoverishment of the plaintiff and be as a result of the violation. To the extent the court rules in our favor, the Supreme Court or this panel reaffirms our understanding of Goville. We do not believe it will negatively impact the SEC. However, a finding to the contrary will. As under the SEC v. Pentagon, the finding that disgorgement functions as a penalty will effectively prohibit two things. One, joint and several liability, which this Court, as I said, in SEC v. Pentagon already held was not available as a joint and several penalty. Two, it will undermine the abilities of the SEC to obtain prejudgment interest. There is no statute authorizing prejudgment interest. It is obtained only under 70 U.D. 5, which authorizes equitable forms of relief that are necessary and appropriate for the benefit of investors. So we think that the decision to convert an equitable remedy into a legal remedy would have far-reaching consequences for the SEC's ability to obtain this relief, including in this case where they're seeking tens of millions of dollars in disgorgement joint and severally from people who never received it. If the Court is going to read that as a penalty, we would request that the Court apply SEC v. Pentagon, find that it can't be imposed jointly and severally, and likewise that there is no authority to obtain that prejudgment interest since it's not statutorily authorized other than as an equitable remedy under 78 U.D. 5. I'm not available to answer any other questions, but we appreciate the Court's attention to this and look forward to it. All right. Thank you both. We will reserve decision. Thank you, Your Honor.